# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELIA LEMUS, | CASE NO. 1:11-cv-00586-SKO PC |
| Plaintiff, | SECOND SCREENING ORDER DENYING MOTION TO AMEND PRAYER FOR RELIEF AS MOOT AND DISMISSING ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM UNDER SECTION 1983 |
| v. | |
| ARNOLD SHWARZENEGGAR, et al., | |
| Defendants. | (Docs. 13 and 14) |

**Second Screening Order**

**I.   Screening Requirement and Standard**

Plaintiff Delia Lemus, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on April 11, 2011. On March 12, 2012, the Court screened Plaintiff's complaint and dismissed it, with leave to amend, for failure to state a claim. Plaintiff filed an amended complaint on May 10, 2012, and on May 24, 2012, Plaintiff filed a motion to amend her prayer for relief relating to damages, accompanied by the proposed amendment.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

While prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, the pleading standard is now higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.    Discussion**

   **A.    Allegations**

Plaintiff is incarcerated at Central California Women's Facility (CCWF) in Chowchilla, California. She brings this action against the California Department of Corrections and Rehabilitation (CDCR), CCWF, Warden Javier Cavazos, Chief Medical Officer Steven Heyne, Doctors Jameson, Lwin, Romero, Gill, Mekkam, MacKenna, and Do, Registered Nurses Barr and Lewis, and all CDCR employees at CCWF for violating her rights under the Eighth Amendment of the United States Constitution.

Plaintiff's allegations are based almost entirely on her review of her medical records. Plaintiff alleges that in 1996, she went to see a doctor at CCWF for complaints of a rash and pain

in her shoulder and hip.[1]  Throughout 1996, Plaintiff went to the doctor 10 times, based on a persistent feeling that something was wrong.  Plaintiff was initially misdiagnosed with scabies, which she describes as humiliating, and she had blood drawn for testing 4 times, with no relief.  Finally, a nurse recognized Plaintiff's symptoms and ordered a hepatitis panel, which revealed Plaintiff was positive for hepatitis B.

In 1997, Plaintiff had blood work done at Madera Hospital with results in the out of normal range.  Plaintiff tested positive for the hepatitis C virus (HCV), but she alleges that as of May 1997, she had not yet been informed of the results by her doctor.  In 1997, Plaintiff saw the doctor 8 times and had blood work done 3 times with results in the out of normal range.

Plaintiff alleges that by 1997/1998, she had been placed in the chronic care patient (CCP) program for HCV, and CCP flow sheets show that in 1998, she went to the doctor 7 times, saw the CCP provider 6 times, and had lab work done 4 times.

In 1999, Defendant Wu ordered a liver wedge biopsy, which showed no abnormal fibrosis or cirrhosis but out-of-range RNA.  Plaintiff alleges that in 1999, she went to the doctor 18 times and had lab work done 6 times, the results of which were out-of-range.  Defendant McKenna documented that Plaintiff's RNA had increased from 16,000 to over 181,000, Plaintiff's biopsy showed no cirrhosis, and the plan was to refer Plaintiff to the hepatitis clinic for a recommendation regarding interferon treatment.  Plaintiff alleges that this was never done, she was not counseled verbally, and she found the note in her medical records, which evidences deliberate indifference.

Plaintiff alleges that on January 3, 2000, Defendant Mekkam noted in her chart that she was HCV positive, her liver biopsy showed minimal inflammation, there would be no further evaluation or treatment for either condition at that time, and she was discharged from the CCP program.

---

[1] The Court recognizes that Plaintiff's claims may be barred, at least in part, by the applicable statute of limitation.  Cal. Civ. Proc. Code §§ 335.1, 352.1.  However, the Court declines to raise the issue *sua sponte* because the date of accrual for Plaintiff's claims is not clear from the face of her complaint, see Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012) (screening standard for failure to state a claim the same as the Fed. R. Civ. P. 12(b)(6) standard); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010) (claim may be dismissed under Fed. R. Civ. P. 12(b)(6) as barred by the statute of limitation when the running of the statute is apparent on the face of the complaint), and the statute of limitation may have been equitably tolled during the pendency of one or more inmate appeals, McDonald v. Antelope Valley Community College Dist., 45 Cal.4th 88, 101-03 (Cal. 2008).

On May 17, 2000, a preventative care visit notation indicated liver problems, hepatitis B and C, and back and leg pain, plus acknowledgment of Defendant Mekkam's discharge of Plaintiff from the CCP program.

In 2001, Defendant Jameson documented that Plaintiff was HCV positive and he advised her to do blood work to determine whether or not her infection was active and if she needed further treatment. At the time, Plaintiff complained of shoulder, knee, and joint pain and stomach/gastrointestinal distress, which are symptoms secondary to HCV, but her complaints were ignored and Defendant Jameson failed to counsel her verbally regarding further treatment.

In 2002, Defendant Jameson ordered an abdominal biopsy and referred her to Tele-Med for HCV. Plaintiff went to the doctor 27 times and had lab work done 13 times, but she was never counseled regarding interferon treatment although her HCV numbers were dangerous out of range and her liver biopsies reflected progressive liver damage.

In 2003, Plaintiff was still unaware of the existence of interferon treatment and it had not been mentioned to her, although it had been mentioned for years in her medical records. Plaintiff went to the doctor 12 times, had 2 CCP/Tele-Med appointments, and had lab work done 8 times, which indicated her "dire need for treatment." (Amend. Comp., p. 6. ¶12.) Plaintiff alleges that Defendants Jameson and McKenna were directly in charge of her medical care and acted in disregard to her health.

In 2004, Plaintiff saw the doctor 9 times, had 3 Tele-Med appointments, and had lab work done 8 times. Plaintiff alleges that she still had not been offered any supplemental treatment and she was under the impression she was okay, which was not true.

In 2005, Plaintiff saw the doctor 14 times, had 2 Tele-Med appointments with Defendant Jameson, and had lab work done 7 times that year. Plaintiff alleges that her liver biopsy showed stage 3 HCV. Plaintiff alleges that she did not thereafter see Defendant Jameson.[2]

///

///

---

[2] Plaintiff presumably means for the next few years, because she alleges she again saw Defendant Jameson in 2008.

In 2006, Plaintiff complained of intense abdominal pain, aching joints, and shoulder pain, and Defendant Romero ordered an unspecified abdominal test. Plaintiff saw the doctor 11 times and had lab work done 5 times that year.

In 2007, Plaintiff had lab work done 5 times, but there are no "real records" of doctors' visits, and she alleges that she was "lost" by Tele-Med during 2006/2007. (Id., p. 7. ¶¶16, 17.)

Plaintiff had an ultrasound-guided liver biopsy by Dr. Spencer on December 1, 2007, which detected a nodule, identified as a cavernous hemangioma. Plaintiff demanded to know what the nodule was and the radiology department said it was a cystic nodule, which was abnormal. Plaintiff demanded to speak with Defendant Jameson via Tele-Med.

In 2008, Defendant Jameson put Plaintiff back on Tele-Med. Plaintiff's December 2007 liver biopsy report indicated Plaintiff had chronic active hepatitis, grade 3, and stage 4 cirrhosis.

Plaintiff filed an inmate appeal seeking interferon treatment which was granted. Plaintiff underwent treatment from August 2008 to June 10, 2009, but the damage to her liver is irreparable and fatal. In 2008, Plaintiff saw the doctor 7 times, had 10 Tele-Med appointments with Defendant Jameson, and had lab work done 15 times.

On March 21, 2008, Plaintiff had an upper gastrointestinal endoscopy and she was diagnosed with esophageal varices and ulcers due to untreated HCV.

Plaintiff alleges that in 2009, Defendant Lwin "forged" the flow sheets for her interferon treatment while in her presence to indicate she had been monitored closely, which she disputes. (Id., p. 8, ¶21.)

Plaintiff alleges that in the fall of 2009, she filed an inmate appeal complaining about the denial of medical care and the appeal was exhausted in 2010, but she was never taken to the University of California San Francisco HCV Clinic which was the relief that had been granted at the second level of review.

Plaintiff alleges that there has been a pattern of deliberate indifference to her medical care needs and then a cover-up of the lack of medical care, in willful and reckless disregard of her life.

///

///

**B.    Discussion**

    **1.    CDCR and CCWF as Defendants**

Plaintiff names CDCR and CCWF as defendants. However, the Eleventh Amendment erects a general bar against federal lawsuits brought against the state, Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010) (citation and quotation marks omitted), and CDCR and CCWF are shielded from suit because they are state agencies, Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). Accordingly, Plaintiff may not maintain a claim under section 1983 against CDCR and CCWF.

    **2.    Claims Against Individual Staff Members**

        **a.    Legal Standard**

Under section 1983, Plaintiff must link each named defendant to the participation in the violation at issue. Iqbal, 556 U.S. at 676-77, 129 S.Ct. at 1948-49; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, Iqbal, 556 U.S. at 676-77, 129 S.Ct. at 1948-49; Ewing, 588 F.3d at 1235, and administrators or supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Some culpable action or inaction must be attributable to each defendant. Starr, 652 F.3d at 1205; Jeffers v. Gomez, 267 F.3d 895, 914-15 (9th Cir. 2001); Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct.

6

2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety.  E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [her] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent."  Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.  Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (internal quotation marks omitted).

**b.      Findings**

Unquestionably, hepatitis constitutes a serious medical need.  Wilhelm, 680 F.3d at 1122; Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).  However, the existence of a serious medical need alone does not give rise to an Eighth Amendment claim.  Plaintiff must allege facts sufficient

7

to support a claim of deliberate indifference to serious medical needs, which requires a showing that the named defendants knowingly disregarded an excessive risk of harm to Plaintiff's health. Farmer, 511 U.S. at 837.

Here, Plaintiff is basing her claims on the failure of those involved in her medical care to counsel her on the existence of interferon treatment and to offer it as a treatment option prior to 2008 when she alleges it was too little too late and she had irreversible liver damage. However, there are no factual allegations linking Defendants Cavazos, Heyne, Gill, Barr, and Lewis to any actions or omissions which demonstrate deliberate indifference to Plaintiff's medical needs; thus, they are entitled to dismissal.

With respect to Defendants Wu, Jameson, MacKenna, Mekkam, Romero, and Lwin, the Court finds that, even under the more liberal pleading standard accorded to prisoners proceeding pro se, Plaintiff's allegations do not support a plausible claim for violation of the Eighth Amendment. Wilhelm, 680 F.3d at 1121; Hebbe, 627 F.3d at 342. The deliberate indifference doctrine is limited in scope. Wilhelm, 680 F.3d at 1122 (quotation marks omitted). Plaintiff's mere disagreement with the course of treatment chosen by physicians is insufficient, as a matter of law, to establish deliberate indifference. Wilhelm, 680 F.3d at 1122 (citation and quotation marks omitted); accord Snow, 681 F.3d at 987. Even gross negligence by a physician is insufficient to support a claim. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990); accord Snow, 681 F.3d at 987-88. Rather, deliberate indifference requires a showing that the course of treatment chosen was medically unacceptable under the circumstances and that it was chosen in conscious disregard of an excessive risk to Plaintiff's health. Snow, 681 F.3d at 988 (citation and quotation marks omitted). No such showing has been made.

Plaintiff's unsupported belief that she should have been offered interferon treatment prior to 2008 does not support a viable Eighth Amendment claim. There are simply no facts to support a reasonable inference that Defendants Wu, Jameson, MacKenna, Mekkam, Romero, and Lwin knowingly disregarded an excessive risk of harm to Plaintiff's health. Plaintiff's allegations demonstrate that her medical condition has been monitored since 1996, including by physicians outside the prison via Tele-Med, and while Plaintiff may disagree with the course of treatment

pursued by the physicians involved in her care, that is insufficient as a matter of law to support an Eighth Amendment claim. Snow, 681 F.3d at 987; Wilhelm, 680 F.3d at 1122.

### III.     Conclusion and Order

The Court finds that Plaintiff's amended complaint fails to state a claim upon which relief may be granted under section 1983 for violation of the Eighth Amendment. Plaintiff was previously given notice of the deficiencies in her claim and the opportunity to amend, and based on the nature of the deficiencies at issue, further leave to amend is not warranted. Lopez, 203 F.3d at 1130; Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

As previously stated, hepatitis C constitutes a serious medical need and the Court sympathizes with Plaintiff's situation in battling a chronic, life threatening disease. However, Plaintiff's amended complaint sets forth no allegations which support a reasonable inference that doctors acted with deliberate indifference toward her medical issues. Plaintiff's mere disagreement with the course of treatment chosen and her unsupported belief that she should have been provided with interferon treatment are insufficient to support a claim. Snow, 681 F.3d at 987; Wilhelm, 680 F.3d at 1122.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's motion to amend her prayer for relief as to damages, filed on May 24, 2012, is DENIED as moot;
2. This action is DISMISSED, with prejudice, for failure to state a claim under section 1983; and
3. This dismissal is subject to the "three-strikes" provision set forth in 28 U.S.C. § 1915(g). Silva v. Di Vittorio, 658 F.3d 1090, 1098-99 (9th Cir. 2011).

IT IS SO ORDERED.

**Dated:     November 6, 2012**                    /s/ Sheila K. Oberto
                                                                        UNITED STATES MAGISTRATE JUDGE